

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00142-CR

_____

KENNETH R. BIRDO, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1733259R

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

Appellant Kenneth R. Birdo was convicted by a jury of two third-degree felony counts: (1) continuous violence against the family and (2) assault against a family member by impeding breathing or circulation (occlusion assault). On appeal, Birdo complains that the convictions violated the protection against multiple punishments under the Double Jeopardy Clause of the Fifth Amendment. We will affirm in part and vacate in part.

## I. BACKGROUND

### A. TRIAL EVIDENCE

At trial, the State presented evidence of multiple assaults by Birdo against Christine Willars and Aneica Wilson.

#### 1. November 30, 2021 Assault on Willars

According to eyewitness testimony, on November 30, 2021, Birdo and Willars were dining at a local restaurant. The couple started arguing and then Birdo punched Willars in the face. Willars fell to the ground and then Birdo hit her again while she was on the ground. Birdo fled before the police arrived. During the assault, Willars had passed out and awoke with facial swelling so severe that "she could barely see and she could barely talk." Birdo and Willars had been in a dating relationship.

#### 2. March 20, 2022 Assaults on Wilson

Wilson testified that she and Birdo had been in a dating relationship. She stated that, on March 20, 2022, she and Birdo visited a relative of Birdo's at the

2

relative's apartment. While at the apartment, the couple started arguing. During the argument, Birdo slapped Wilson and squeezed her neck, causing her pain and leading her to believe that she "was going to die." Wilson testified that Birdo kept her from leaving the apartment that weekend, which culminated in a second assault during which Birdo hit her with "a closed fist." Because Birdo was "blocking the door" to keep her from leaving the apartment, Wilson was forced to jump from the apartment's second-floor balcony to escape.

### 3. March 25, 2022 Assaults on Wilson

Wilson's testimony and video evidence paint a clear picture of Birdo's March 25, 2020 assaults. The videos show Birdo arrive at the apartment complex where Wilson lived in a second-floor apartment. Birdo and another man engage in a short argument outside of Wilson's apartment, and then Wilson emerges from her apartment. Wilson and Birdo argue before Birdo grabs her and forces her to the top of a stairwell. The two then move outside of view from the camera, but their struggle can be heard in the recording. During this struggle, Wilson screams multiple times and then falls silent for approximately five seconds. She then yells, "he's choking me." Soon after, the two fall down the stairs, with Birdo on top of Wilson. Birdo then drags Wilson across the ground by her head, yells something at her, and punches her twice in the face. Birdo turns to put on his shoe that had come off when he and Wilson fell down the stairs, which affords Wilson the opportunity to stand and

3

attempt to walk away. Birdo then punches her once more in the face before leaving the apartment complex.

Wilson testified that, when she and Birdo were at the top of the stairs, he had his forearm around her neck. She said that this rendered her unable to breathe and that she may have blacked out before falling down the stairs.

## B. INDICTMENT

Birdo was indicted for both the continuous violence against the family and occlusion assault counts under the same indictment:

[Count One]: That Kenneth R Birdo . . . during a period of time that is 12 months or less in duration, engage[ed] in conduct two or more times that constituted assault bodily injury, specifically:

On or about the 30th day of November 2021, did intentionally or knowingly cause bodily injury to Christine Willars, a member of defendant's family or household or a person with whom the defendant has or has had a dating relationship[,] by striking, punching, hitting, and/or pushing her with his hand,

And/or

On or about the 20th day of March 2022, did intentionally or knowingly cause bodily injury to Aneica Wilson, a member of the defendant's family or household or a person with whom the defendant has or has had a dating relationship[,] by striking, punching, hitting, slapping, pushing, and/or grabbing her with his hand;

And/or

On or about the 25th day of March 2022, did intentionally or knowingly cause bodily injury to Aneica Wilson, a member of the defendant's family or household or a person with whom the defendant has or has had a dating relationship[,] by striking, punching, hitting, slapping, grabbing, pushing, pulling, and/or throwing her with his hand.

4

Count Two: . . . On or about the 25th day of March 2022, did intentionally, knowingly, or recklessly cause bodily injury to Aneica Wilson by impeding the normal breathing or circulation of the blood of Aneica Wilson by applying pressure to the throat or neck of Aneica Wilson, a member of the defendant's family or household or a person with whom the defendant has or has had a dating relationship.[1]

## C. RELEVANT TRIAL PROCEDURE

The jury charge tracked the indictment against Birdo as to the elements of the charged offenses. At a charge conference, Birdo objected to the language related to count two in the charge, arguing that count two involved the "same unit of prosecution as the assault continuous family violence as charged in count one" and that the jury could therefore "find [Birdo] guilty of the same criminal offense and the same unit of prosecution" in both counts.[2] The trial court overruled this objection.

---

[1] The indictment also alleged that Birdo was a habitual offender.

[2] The State suggests on appeal that this objection may not have clearly raised a Double Jeopardy claim with the trial court, which would trigger a different review on appeal. *See Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000) (holding that a double jeopardy violation may be raised for the first time on appeal only if the violation "is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests"). We disagree with the State because Birdo's objection—though it did not specifically contain the words "double jeopardy"—was specific enough to inform the trial judge of his concern that he was being subjected to multiple convictions for the same criminal offense, which is, of course, the essential protection afforded by the Double Jeopardy Clause. *See Resendez v. State*, 306 S.W.3d 308, 312–13 (Tex. Crim. App. 2009) ("Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.") (internal quotations omitted).

The jury found Birdo guilty of both counts. Birdo was sentenced to forty years' confinement on each count under two separate judgments of conviction, with the sentences to run concurrently. No fines or restitution were imposed on either conviction, but both convictions included habitual offender findings. This appeal followed.

## II.  THE LAW

In his sole point of error, Birdo argues that he was subjected to multiple punishments in violation of his double jeopardy rights. His essential contention is that the legislature's intent when creating the offense of continuous violence against the family was that a defendant would not be subjected to punishment for that offense as well as additional bodily-injury assaults that could have been brought under the same count of continuous violence.[3] We agree.

### A.  DOUBLE JEOPARDY: MULTIPLE PUNISHMENTS

The Fifth Amendment of the United States Constitution provides that no person shall have life or limb twice put in jeopardy for the same offense. U.S. CONST.

---

[3]More specifically, Birdo argues—applying *Blockburger* and the related *Ervin* factors—that the legislature clearly intended that a person could not be punished twice for continuous violence and occlusion assault under the facts of this case. *See Blockburger v. U.S.*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932); *Ervin v. State*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999). However, because we will hold that the legislature's intent is clear on this point from the face of the continuous violence statute, we need not consider *Blockburger* to come to this conclusion. *See Garrett v. United States*, 471 U.S. 773, 779, 105 S. Ct. 2407, 2412 (1985) ("We have recently indicated that the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history.").

amend. V. Generally, this provision—the Double Jeopardy Clause—protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Adams*, No. PD-0711-18, 2019 WL 5057265, at *3 (Tex. Crim. App. Oct. 9, 2019); *Speights v. State*, 464 S.W.3d 719, 722 (Tex. Crim. App. 2015).

The relevant inquiry in a multiple-punishments case is always this: Did the legislature intend to permit multiple punishments? *Loving v. State*, 401 S.W.3d 642, 646 (Tex. Crim. App. 2013). To determine if the Double Jeopardy Clause's prohibition against multiple punishments for the same offense has been violated, we assess whether an appellant has been "convicted of more offenses than the legislature intended." *Ex Parte Milner*, 394 S.W.3d 502, 507 (Tex. Crim. App. 2013) (quoting *Ervin v. State*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999)); *see Ball v. United States*, 470 U.S. 856, 861, 105 S. Ct. 1668, 1671–72 (1985). To determine if the legislature intended to treat an appellant's acts as a single offense or as multiple offenses, we must ascertain the "allowable unit of prosecution" from the statutory text and any available legislative history. *Ex Parte Milner*, 394 S.W.3d at 507; *see Sanabria v. United States*, 437 U.S. 54, 69–70, 98 S. Ct. 2170, 2181–82 (1978); *Ex parte Hawkins*, 6 S.W.3d 554, 556–57 (Tex. Crim. App. 1999).

In a multiple-punishments context, two offenses may be the same if the two offenses are defined under distinct statutory provisions but the legislature made it

7

clear that only one punishment is intended. *Littrell v. State*, 271 S.W.3d 273, 275–76 (Tex. Crim. App. 2008). "Although this inquiry resolves the double jeopardy analysis, it is purely one of statutory construction." *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011) (quoting *Jones v. State*, 323 S.W.3d 885, 888 (Tex. Crim. App. 2010)). Statutory construction is a question of law, which we review de novo. *Id.*

## B. THE OFFENSES

### 1. Continuous Violence Against the Family

A person commits the offense of continuous violence against the family if, during a period that is twelve months or less, "the person two or more times engages in conduct that constitutes an offense under Section 22.01(a)(1)[4] against another person or persons whose relationship to or association with the defendant is described by Section 71.0021(b), . . . Family Code.[5] Tex. Penal Code Ann. § 25.11(a). However, the legislature made it clear that

> a defendant may not be convicted in the same criminal action of another
> offense the victim of which is an alleged victim of the offense under
> Subsection (a) and an element of which is any conduct that is alleged as
> an element of the offense under Subsection (a) unless the other offense:
> (1) is charged in the alternative; (2) occurred outside the period in which

[4]Subsection 22.01(a)(1) of the penal code provides that a person commits assault if they "intentionally, knowingly, or recklessly cause[] bodily injury to another, including the person's spouse." Tex. Penal Code Ann. § 22.01(a)(1).

[5]Subsection 71.021(b) of the Family Code defines "dating relationship" as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." Tex. Fam. Code Ann. § 71.0021(b). It is undisputed that Birdo had had dating relationships with both Willars and Wilson.

the offense alleged under Subsection (a) was committed; or (3) is considered by the trier of fact to be a lesser included offense of the offense alleged under Subsection (a).

*Id.* § 25.11(c).

## 2. Occlusion Assault

Subsection 22.01(b)(2)(B) of the Penal Code provides that a person commits a third-degree felony if they commit a Subsection 22.01(a)(1) assault against a person with whom they have had a dating relationship if "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." *Id.* § 22.01(b)(2)(B). By its definition, occlusion assault is also a bodily-injury assault. *Ortiz v. State*, 623 S.W.3d 804, 807–08 (Tex. Crim. App. 2021) (outlining the three elements of occlusion assault as "(1) intentionally, knowingly, or recklessly causing bodily injury; (2) a relevant relationship between the complainant and the defendant; and (3) commission of the assault by [occlusion]") (internal quotations omitted).

## C. RELEVANT PRECEDENT

Texas courts, including our own, have addressed the issue of whether the legislature intended multiple units of prosecution for an offense of bodily-injury assault and continuous family violence based on the same underlying conduct. Our sister court in Houston determined that "a double jeopardy violation results if the State attempts to punish [an] appellant for any underlying bodily-injury assault both

9

under a separate assault count and as part of a continuous family violence count."
*Ellison v. State*, 425 S.W.3d 637, 647 (Tex. App.—Houston [14th Dist.] 2014, no pet.).
In coming to this conclusion, the *Ellison* court relied heavily on the Texas Court of
Criminal Appeals' (CCA) decision in *Soliz v. State*, 353 S.W.3d 850, 851–53 (Tex. Crim.
App. 2011). *Id.*

In *Soliz*, the CCA considered Penal Code Section 21.02 (continuous sexual
abuse of a young child or children),[6] which employs markedly similar language as that
found in Section 25.11's continuous family violence statute. *Soliz*, 353 S.W.3d at 851–
52. In determining a lesser-included-offense issue, the *Soliz* court held that the
legislature's inclusion of Subsection 21.02(e)—which substantially tracks Subsection
25.11(c)—

> prevents the State from mixing a [continuous sexual abuse] count with a
> count for a discreet sexual offense that could have served as part of the
> [continuous] count. The discrete sexual offense must either be charged
> in the alternative, fall outside the time period for the [continuous] count,
> or . . . be submitted as a lesser-included offense. Aggravated sexual
> assault committed within the time frame of the indicted offense could be
> charged in the alternative or as a lesser-included offense (leading to just
> one conviction), but it could not be charged as an *additional* offense
> (leading to two convictions).

---

[6]Subsection 21.02(b) makes it an offense for a person to, during a period that is
thirty or more days in duration, commit two or more acts of sexual abuse against one
or more victims. Tex. Penal Code Ann. § 21.02(b). Subsection 21.02(e) provides that
"a defendant may not be convicted in the same criminal action of [another offense of
sexual abuse] the victim of which is the same victim as a victim of the offense alleged
under Subsection (b)" unless the other offense of sexual abuse is charged in the
alternative, occurred outside the relevant thirty-day period, or is included as a lesser-
included offense. *Id.* § 21.02(e).

*Id.* at 852–53 (emphasis in original). Drawing on this language, the *Ellison* court concluded that "where the circumstances involved the same 12-months-or-less period and same alleged [victim], the State could not charge [an] appellant both with continuous violence against the family and, as an additional offense, with bodily-injury assault for each underlying instance of violent conduct." *Ellison*, 425 S.W.3d at 647.

We adopted *Ellison's* reasoning in a case involving facts similar to those presented here. *See Rachal v. State*, No. 02-18-00500-CR, 2019 WL 5996985, at *6–7 (Tex. App.—Fort Worth Nov. 14, 2019, pet. ref'd) (mem. op., not designated for publication). There, Rachal was charged under two indictments with six counts—including continuous violence against the family, occlusion assault, and assault on a family member—based on two violent incidents that occurred in September and December of 2017 against the same victim. *Id.* at *2–3. Specifically, the continuous violence count was predicated upon two bodily-injury assaults against the victim that occurred on those dates. *Id.* Rachal was tried by a single jury for both indictments and convicted of all six counts. *Id.* at *3. He complained on appeal that the convictions for occlusion assault and continuous violence subjected him to multiple penalties in violation of the Double Jeopardy Clause. *Id.* at *5. We agreed and held that the double-jeopardy violation against Rachal "stemmed from the impermissible overlap of two of the same underlying instances of bodily-injury assault against the same victim during the same time period." *Id.* at *6.

### III. BIRDO IMPERMISSIBLY SUBJECTED
### TO MULTIPLE PUNISHMENTS

By including Subsection 25.11(c) as part of the continuous violence against the family statute, the legislature indicated its clear intent: a person cannot be convicted in the same criminal action of continuous violence against a victim and also be convicted of additional, discrete instances of bodily-injury assault against that same victim if those discrete assaults could have been charged as part of the continuous count. Tex. Penal Code Ann. § 25.11(c); *see Ellison*, 425 S.W.3d at 647; *cf. Soliz*, 353 S.W.3d at 851–52. Instead, the State may charge the additional, discrete acts alternatively or as lesser-included offenses. Tex. Penal Code Ann. § 25.11(c).

Here, Birdo's continuous violence count was predicated on one bodily-injury assault against Willars from November 20, 2021, and two bodily-injury assaults against Wilson from March 20, 2022, and March 25, 2022. His occlusion-assault count against Wilson also stemmed from the events of March 25, 2022. Because the occlusion assault occurred against one of the same victims alleged in the continuous violence count—Wilson—and within the same twelve-month period, it could have been charged as part of the continuous count. And because it could have been charged as part of the continuous violence count, it was not available as a separate count upon which Birdo could be additionally convicted. *Id.* Having been convicted of both, we hold that Birdo's right against multiple punishments was violated.

The State argues that Birdo's double jeopardy rights were not violated because the jury could have convicted Birdo of continuous violence even without the March 25 assault against Wilson. The State further contends that double jeopardy was not implicated here because occlusion assault and other bodily injury assaults—even if they occur during the same transaction—are separate and distinct offenses that can support multiple convictions.[7] But both of these arguments ignore the legislature's clear directive from Subsection 25.11(c) that a person cannot be convicted of continuous family violence and occlusion assault in the manner that Birdo was here. In the multiple-punishments context, our analysis ends with the legislature's clear intent on the matter. *Littrell*, 271 S.W.3d at 275–76.

## IV. REMEDY

"The remedy for impermissible multiple convictions and punishments is to retain the most serious offense and vacate the other, the more serious offense ordinarily being defined as the offense for which the greatest sentence was assessed." *Littrell*, 271 S.W.3d at 279 n.34. When the sentences are the same for both convictions, we are directed to look to other factors, such as the degree of felony,

---

[7]To support this argument, the State relies heavily upon *Brown v. State*, 640 S.W.3d 889, 893–94 (Tex. App.—Waco 2021, pet. ref'd). *Brown*, though, stands only for the proposition that occlusion assault and other types of bodily-injury assaults can be separate and distinct offenses for double-jeopardy purposes even if they occurred during the same criminal episode. Because it says nothing about the interplay between charges of continuous violence and discrete instances of bodily-injury assaults, it provides little insight for our purposes.

13

whether there was a deadly weapon finding, and whether fines or restitution were imposed for only one of the convictions. *Bien v. State*, 550 S.W.3d 180, 188 (Tex. Crim. App. 2018) (citing *Ex parte Cavazos*, 203 S.W.3d 333, 339 n.8 (Tex. Crim. App. 2006)). The CCA has instructed that, when all other factors are equal, the most serious offense can be the offense named in the first verdict form, which is generally the offense described in count one of the indictment. *Id.*; *see Gunter v. State*, No. 13-22-00020-CR, 2023 WL 3872674, at *6 (Tex. App.—Corpus Christi–Edinburg June 8, 2023, no pet. h.) (vacating count one of multiple-count indictment where sentences were otherwise identical); *Ruth v. State*, No. 13-10-00250-CR, 2011 WL 3840503, at *8–9 (Tex. App.—Corpus Christi-Edinburg Aug. 29, 2011, no pet.) (mem. op., not designated for publication) (same); *Pinkston v. State*, No. 02-08-165-CR, 2009 WL 2414373, at *7 (Tex. App.—Fort Worth Aug. 6, 2009, no pet.) (mem. op., not designated for publication) (same).

Here, both of Birdo's convictions were third-degree felonies, included habitual offender findings, and had identical sentences—forty years' confinement without fines or restitution. Under these circumstances, we hold that the count one offense—continuous violence against the family—is the most serious offense. *Bien*, 550 S.W.3d at 188. Accordingly, we affirm the conviction under count one and vacate the conviction for occlusion assault under count two.

14

# V. CONCLUSION

We vacate the trial court's judgment of conviction against Birdo under count two and affirm its judgment of conviction under count one.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 20, 2023